RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  10 / 12 / 05
BY  DM

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| JOYCE C. ROBERTS, ET AL. | CIVIL ACTION NO. 00-0371 |
| VERSUS | JUDGE DONALD E. WALTER |
| THE CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING*

Before this Court is a Motion for Summary Judgment [Doc. #197] filed on behalf of defendants, former Police Chief Steve Prator and the City of Shreveport. Plaintiffs oppose this motion. For the reasons assigned herein, defendants' motion is **GRANTED IN PART** and **DENIED IN PART**, with the Court declining to exercise jurisdiction over plaintiffs' remaining state law claims.

## STATEMENT OF THE CASE

On Sunday morning, March 14, 1999, Officer Robert Rivet ("Officer Rivet") of the Shreveport Police Department was working as a crossing guard for the Springs of Grace Baptist Church. As Officer Rivet escorted a woman and her child across the street, a car driven by Undray Carter ("Carter") approached. While attempting to get the pedestrians out of the way, Officer Rivet signaled to Carter to slow down and stop. Although the parties dispute what occurred in the ensuing moments, it is undisputed that Officer Rivet ended up on the hood of Carter's vehicle.[1]

Officer Rivet struck Carter's windshield twice with his service revolver and ordered him to stop the car. Carter, cursing, applied the brakes, then the gas, sequentially, apparently trying to throw

---

*This opinion is not intended for commercial print or electronic publication.

[1]See Roberts v. City of Shreveport, 397 F.3d 287, 290 n. 2 (5th Cir. 2005)

Officer Rivet off of the car. As he was falling, Officer Rivet fired a single, fatal shot at Carter. Officer Rivet gave no warning before discharging his weapon as he was thrown from the moving vehicle. Roberts v. City of Shreveport, 397 F.3d 287, 290 (5th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiffs, the mothers of Undray Carter's two minor children, brought this §1983 and Louisiana state tort law action against multiple defendants asserting that they violated Carter's Fourth Amendment right to be free from unreasonable seizure when he was shot and killed by Officer Rivet. This Court severed the claims against Officer Rivet and held a jury trial. The jury returned a special verdict, and found that (1) Officer Rivet used excessive force in the incident at issue, and (2) Officer Rivet's conduct was objectively reasonable in light of clearly established law. Based on these findings, this Court dismissed the §1983 claims against Officer Rivet on qualified immunity grounds.

After the §1983 claims against Officer Rivet were dismissed, the remaining defendants, former Police Chief Steve Prator ("Chief Prator") and the City of Shreveport (the "City"), moved for summary judgment which this Court denied. Defendants appealed. On appeal, the Fifth Circuit dismissed the claims against Chief Prator in his individual capacity based on qualified immunity grounds,[2] but dismissed the appeals of the City and Chief Prator in his official capacity for lack of jurisdiction. The claims against the latter two defendants are the subject of the Motion for Summary Judgment presently before this Court.

In their motion, defendants correctly assert that the Fifth Circuit has specifically stated that Officer Rivet was adequately trained, and that the evidence of prior incidents involving Officer Rivet

---

[2] Id., at 290.

2

offered by plaintiffs was insufficient to establish deliberate indifference. Thus, according to the law of the case, plaintiffs' remaining claims must be dismissed. In opposing defendants' motion, plaintiffs, despite the Fifth Circuit ruling, offer no new evidence to support their claims. Plaintiffs assert that Chief Prator and the City condoned Officer Rivet's "repeated" use of excessive force by not reassigning him, giving him additional training or properly investigating the incidents relied on by plaintiffs. As explained below, based on the specific findings of the Fifth Circuit, this Court must agree with defendants and plaintiffs' claims must be dismissed.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must

produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Plaintiffs assert that defendants' motion should be denied as they failed to carry their burden on summary judgment, and "have not filed any evidence to support their motion." Plaintiff's Opp., pp. 2-3. The Court notes that plaintiffs' argument bears no weight on this Court's analysis as "[e]ver since if not before Celotex, '[t]he moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case.'" Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991) (quoting Latimer v. Smithkline & French Laboratories, 919 F.2d 301, 303 (5th Cir. 1990)).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

## LAW AND ANALYSIS

I. **§1983 Claims.**

A claim asserted against a state officer in his official capacity is a claim against the entity of

4

which the officer is an agent. Turner v. Houma Municipal Fire and Police Civil Service Board, 229 F.3d 478, 483 (5th Cir. 2000). Thus, a claim against Chief Prator is actually a claim against the City, and will be afforded the same treatment.

Municipal liability under §1983 may not be based upon a theory of *respondeat superior*. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Id. at 694, 98 S.Ct. at 2037-38. To establish a municipality's liability for a constitutional tort, the plaintiff must show first, that the municipality has an official policy, practice or custom that could subject it to §1983 liability. Id., 436 U.S. at 690-94, 98 S.Ct. 2018. Second, the official policy must be linked to the constitutional violation. Id. Finally, the official policy must reflect the municipality's deliberate indifference to that injury. Hare v. City of Corinth, 74 F.3d 633, 649 n. 4, citing Farmer v. Brennan, 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

To hold a municipality liable under § 1983 for its employees' acts, a plaintiff must show that a policy of hiring or training caused those acts. Such a showing requires proof that (1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. City of Canton v. Harris, 489 U.S. 378, 385-87, 109 S.Ct. 1197, 1205-07, 103 L.Ed.2d 412, 424-26 (1989); Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996).

To establish §1983 liability in this case, plaintiffs must show, at the least, that defendants had

a custom or policy of inadequately training or supervising its officers in the appropriate use of force. Further, plaintiffs must come forward with some evidence that the City and Chief Prator were deliberately indifferent to Carter's constitutional rights. In opposing the Motion for Summary Judgment at issue, plaintiffs have failed to come forward with any evidence beyond that before the Fifth Circuit. Based on that evidence, or lack thereof, the Fifth Circuit has stated that "even assuming that lack of training 'caused' Carter's injuries, the plaintiffs have not provided sufficient evidence of either Prator's failure to train (the first requirement) or his deliberate indifference to Carter's constitutional rights (the third requirement) to create a triable fact issue." Roberts, 397 F.3d at 292. This Court is bound by the Fifth Circuit's findings as they are the law of the case.

### A. Inadequate Training.

For a supervisor or municipality to be liable for failure to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." Snyder v. Trepagnier, 142 F.3d 791, 798 (quoting City of Canton, 489 U.S. at 390-91, 109 S.Ct. at 1205-06). In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability. Id.

As noted by the Fifth Circuit, "[t]he standard applicable to failure to train allegations against supervisors is based on that for municipal liability." Roberts, 397 F.3d at 293 (citing Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452-54 & nn. 7-8 (5th Cir. 1994)(*en banc*)). Therefore, the analysis used by the Fifth Circuit to determine whether plaintiffs' claims against Chief Prator in his individual capacity could survive summary judgment is based on the analysis that must be used by this Court for those claims against Chief Prator in his official capacity, see Turner v. Houma Municipal Fire and Police Civil Service Board, 229 F.3d 478, 483 (5th Cir. 2000), and the City.

Plaintiffs have provided the Court no evidence beyond that before the Fifth Circuit. Accordingly, the findings of the Fifth Circuit that plaintiffs have not provided sufficient evidence must control. In particular, the Court has already found that Officer Rivet, and the other officers of the Shreveport Police Department ("SPD"), were adequately trained:

> Officer Rivet was trained extensively by the State of Louisiana, and his curriculum included additional instruction in the use of force from the State of Louisiana Peace Officer Standards and Training Council. In all, Officer Rivet received hundreds of hours of professional instruction.
>
> \* \* \*
>
> Chief Prator supplied overwhelming evidence that his officers, including Officer Rivet, were adequately trained in the use of deadly force. The City of Shreveport Police Department has a comprehensive policy on the use of deadly force (R. Doc. No. 154, Exhibit D, § IV.A.; Shreveport Police Department General Order SPD 601.6), and all officers undergo training about the *Tennessee v. Garner* standard (R. Doc. No. 154, Exhibit C, ¶ 7 (Affidavit of Louisiana Certified Police Instructor)). This thorough training regimen was not disputed by the plaintiffs' scant evidence.

Roberts, 397 F.3d at 293-94.

Further, for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective. See Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Plaintiffs have made no such allegations in response to defendants' motion. Plaintiffs merely assert that Chief Prator should have ordered additional training for Officer Rivet in light of the prior complaints against Officer Rivet cited by plaintiffs. In addition, plaintiffs have provided the Court no evidence to show a genuine issue exists as to training. As stated above, the Fifth Circuit has spoken directly to this issue and has determined that Officer Rivet, and the other officers of the SPD, received adequate training.

Plaintiffs cannot meet their burden as to the first element of a failure to train or supervise

7

§1983 claim against defendants so their claims must fail as a matter of law.

**B.    Deliberate Indifference.**

To prove deliberate indifference, a plaintiff must demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (internal citations and quotations omitted). A municipality acts with "deliberate indifference" in adopting an otherwise constitutional policy if

> in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Benavides, 955 F.2d at 972 (citations and internal quotations omitted). A plaintiff seeking recovery under a failure to train or supervise allegation must look to whether there was a failure to control an officer's "known propensity for the improper use of force." Roberts, 397 F.3d at 292; see, e.g., Sims v. Adams, 537 F.2d 829, 832 (5th Cir. 1976); Chestnut v. City of Quincy, 513 F.2d 91, 92 (5th Cir. 1975).

As to the evidence regarding deliberate indifference, the Fifth Circuit has stated that "plaintiffs fall short in attempting to demonstrate a pattern of unconstitutional conduct on the part of Officer Rivet. Their proffered evidence of a pattern requires an excessively high level of generality." Roberts, 397 F.3d at 294.

In opposing defendants' currently pending motion, plaintiffs rely on three incidents in particular to "establish that [Officer Rivet's] conduct of using unconstitutional force against Undray Carter was consistent with the policy and the way things are done on the Shreveport Police Force."

Plaintiffs' Opp., pp. 8-9. Two of the three incidents were specifically addressed by the Fifth Circuit in <u>Roberts, supra</u>, while the third incident is addressed generally. The Fifth Circuit determined that all of the incidents cited by plaintiff were insufficient to meet plaintiffs' burden of proof.

In one of the incidents cited, plaintiffs assert that Officer Rivet drew and pointed his firearm at Kara Lewis. In the case *sub judice*, the Fifth Circuit has stated that "Rivet's alleged propensity for *displaying* his firearm is fundamentally different from a propensity to *use* deadly force in the course of ordinary traffic stops." <u>Id.</u> at 294 (emphasis in original). The Court further stated that "the complaint filed by Kara Lewis . . . could not have placed Chief Prator on notice of any problems within the department of *using* deadly force without adequate warning." <u>Id.</u> at 295 n. 9 (emphasis in original).

Similarly, plaintiffs assert that Officer Rivet, while off-duty but dressed in his police uniform, drew his firearm and held it in an "at ready gun position" while approaching Dottius Pope, an African American male. However, plaintiffs admit that Pope had a firearm in his rear pocket. The Fifth Circuit's rationale for dismissing the Kara Lewis incident as irrelevant applies here – a propensity to *display* one's firearm is fundamentally different from a propensity to *use* deadly force. Further, as noted by the Fifth Circuit in this case, "the Supreme Court has repeatedly observed that traffic stops (even those far more innocuous that the one at issue in this case) are inherently dangerous." <u>Roberts</u>, 397 F.3d at 294. It is not unreasonable to expect a law enforcement officer to approach a "suspect" who is known to have a weapon with the officer's firearm drawn for protection.

The third incident relied upon by plaintiffs, the Patrick Morris incident, is the only other instance in which Officer Rivet used deadly force. In that case, this Court awarded Officer Rivet

summary judgment on the ground that Rivet's conduct could not amount to excessive force as a matter of law because Morris was convicted of assault and battery of Officer Rivet during the incident. The Fifth Circuit stated that "[i]f anything, [the Patrick Morris] incident demonstrates that Officer Rivet acted in conformity with the substantial training he had received on the use of deadly force." Roberts, 397 F.3d at 295.

Plaintiffs also make a passing reference to an incident involving Justin Olds, a law enforcement officer with the SPD. Plaintiff's Opp., p. 7. As asserted by defendants, the Fifth Circuit specifically rejected this incident as irrelevant.

> Plaintiffs cite another incident involving the use of deadly force by the Shreveport Police Department. In that case, the jury sitting in the accompanying § 1983 suit specifically found that the officer involved did not use excessive force and therefore did not commit a constitutional violation. See Harris v. City of Shreveport, 69 Fed.Appx. 657 (5th Cir. 2003). This constitutional use of deadly force cannot provide a link to any purported chain of unconstitutional conduct.

Roberts, 397 F.3d at 295 n. 10.

Based on the law of the case, plaintiffs have failed to show a genuine issue for trial as to the deliberate indifference element of their claims.

C.  **"Single Incident" Exception.**

As in the Fifth Circuit, plaintiffs assert that this case fits within the narrow scope of the "single incident" exception to allow municipal liability. To rely on this exception, a plaintiff must prove that the "highly predictable" consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the "moving force" behind the constitutional violation. Brown v. Bryan County, 219 F.3d 450, 461 (5th Cir. 2000). The Fifth Circuit has been "highly reluctant" to allow this exception to swallow the rule that forbids mere respondeat superior

liability. Roberts, 397 F.3d at 295.

The Fifth Circuit has previously examined this case in light of Brown, supra, and has found that:

> [t]here is no evidence that Officer Rivet has been involved in any cases involving the improper use of deadly force. Neither the "unmistakable culpability" of Chief Prator nor the "clearly connected causation" required by Brown, see 219 F.3d at 461, appears in this case.

Roberts, 397 F.3d at 296. Again, plaintiffs have provided this Court no evidence beyond that presented to the Fifth Circuit. In light of the Fifth Circuit's findings, the single incident exception does not apply to plaintiffs' claims.

## II. State Law Claims.

After reviewing the supplemental briefs filed by the parties, this Court finds Louisiana law to be unclear regarding the remaining state law claims. This Court further finds it questionable as to whether the remaining defendants are entitled to immunity under state law. Thus, it is appropriate to defer these issues to the state courts. Accordingly, this Court declines to exercise jurisdiction over plaintiffs' remaining state law claims.

## CONCLUSION

For the reasons stated above, plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE**, and plaintiffs' remaining state law claims are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise jurisdiction over those claims.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

11